ORIGINAL

#87404

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 DEC 18  PM 3: 01

DEPUTY CLERK

1  Bryan W. Wilder
2  1317 Cedar Hill Avenue
3  Dallas, Texas 75208
4  Tel. 214-505-6938
5  bryan@fruitsource.net
6
7
8        **UNITED STATES DISTRICT COURT**
9     **FOR THE NORTHERN DISTRICT OF TEXAS**
10
11        **3-15CV-4013N**
12  Bryan W. Wilder              )
13                              )  **CASE NO.:**
                Plaintiff,       )
14         v.                    )  **COMPLAINT**
                                )
15  Ogden Ragland Mortgage;      )  **TO ENFORCE THE RESCISSION**
    Mortgage Electronic Registration Systems, Inc. )  **UNDER TRUTH IN LENDING ACT**
16  JPMorgan Chase Bank, N.A.;   )  *15 U.S.C.* **1635,** *et seq.* **and/or** *12 CFR.*
    Caliber Home Loans, Inc.;    )  *226.23* **§** *et seq.;*
17  Federal Home Loan Mortgage Corporation )
    /a/k/a Freddie Mac;          )  **TO RETURN THE ORIGINAL NOTE**
18  Connie J. Vandergriff;       )  **MARKED CANCELLED;**
                                )
19  DOES 1-100                   )  **TO RETURN THE MORTGAGE AND**
                                )  **RECORD SATISFACTION OF**
20              Defendants       )  **MORTGAGE.**
21  _____
                                   **RESTITUTION OF MONIES PAID**
22                                 **12 C.F.R. § 1026.23(d)(2)**
23        Plaintiff, Bryan W. Wilder, (hereinafter "Plaintiff" and/or "Wilder") complains

24  against all defendants hereby and alleges as follows:

25              **I. PRELIMINARY STATEMENT**

26        1.    Plaintiff institutes this action for enforcement of rescission, actual damages,

27  statutory damages, and the costs of this action against all named Defendants for multiple

28  violations of the Truth in Lending act, 15 U.S.C. § 1635 et seq., (hereinafter TILA), and Federal

29  Reserve Board Regulation Z, 12 C.F.R. § 226.23.

2.      Promulgated pursuant thereto and as pendent Claims and for Enforcement of Rescission under TILA; Restitution of Assets. Per statutes: Rescission effected per 15 U.S.C. §1635(b), Regulation Z, 12 C.F.R. 226.23(d)(1), 12 C.F.R. 226.23(d)(2) and 12 C.F.R. § 1026.23(d)(2).

3.      Defendants did not protest or contest the rescission notice as required under § 226.23(d)(2)(3) therefore the loan documents and debt has been forfeited and forever released by Defendants and any others involved by their failure to consummate the loan, and to challenge <u>within 20 days of tender of the rescission</u> of their obligations under 226.23(d)(2)(3) by the end of the 20 day performance period ending on *05/14/2015*. Therefore, under the law there is no enforceable Note or Security instrument a/k/a Deed of Trust.

4.      **The instant suit is to enforce the rescission which was effected by operation of law and <u>NOT</u> a suit to make the rescission effective by decision of this court.** The cancellation of the note and security instrument has already happened by operation of law. The rescission is effective, the note and security instrument are void as of the date of mailing of the notice of rescission. The instant suit is to enforce the return of the note marked cancelled, filing reconveyance/cancellation of the security instrument in the county records and return of all monies paid.

## II. <u>JURISDICTION AND VENUE</u>

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331;

6.      The jurisdiction of this court is invoked pursuant to 15 U.S.C. §1611; 15 U.S.C. §1635 and 15 U.S.C. § 1640, federal statutes. In addition, this court has original jurisdiction

1  pursuant to 12 *CFR.* 226.23.

2      7.    This Court has personal jurisdiction over Defendant(s) and venue in this judicial

3  district is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or

4  omissions and violations give rise to the Plaintiff's claims occur, committing acts inside Texas or

5  outside Texas causing injury within Texas.

6                                      **III. <u>THE PARTIES</u>**

7      8.    Plaintiff, Bryan W. Wilder, is a natural person at all times relevant to this

8  complaint has been the owner and resident of real property located at 1317 Cedar Hill Avenue,

9  Dallas, Texas 75208.

10     1.    Defendant Ogden Ragland Mortgage, (hereinafter "Ogden") has a principal place

11 of business at 1601 W 6th, Austin, TX 78703 and has a registered agent Don Page Ragland at the

12 same address to effect service in the state of Texas. Plaintiff reserves the right to amend this

13 complaint to add additional facts when ascertained. Ogden is a broker who received commissions

14 for processing the loan documents signed by Wilder. Ogden pretended to act as a "lender" where

15 in fact they were not, Ogden failed to consummate the transaction.

16     2.    Defendant Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS")

17 MERS is a national registry that tracks the ownership and servicing rights of its members in

18 residential mortgage loans. There are over 6,300 members of MERS. MERS is a wholly-owned

19 subsidiary and an alter ego of MERSCORP Holdings, Inc. MERS also is a Delaware corporation

20 with its principal place of business located at 1818 Library Street, Suite 300, Reston, Virginia

21 20190. For the purposes of this pleading, reference to MERS includes reference to MERSCORP,

22 Inc., MERS registered agent is the Corporation Trust Company, 1209 N. Orange Street,

23 Wilmington, Delaware 19801. MERS is listed as beneficiary on the deed of trust and as such

1   claims ownership interest as beneficiary in the Plaintiff's property and loan documents and by

2   way of an assignment dated January 1, 2013, from Ogden to JPMorgan Chase Bank, N.A.

3       3.    Defendant JPMorgan Chase Bank, N.A.; (hereinafter "Chase") with its principal

4   place of business at 1111 Polaris Parkway, Columbus, OH 43240, does not have registered agent

5   to effect service in the state of Texas. Chase is regulated by the Office of the Comptroller of the

6   Currency. Chase claims to have an interest in the Plaintiff's Deed of Trust and property by way

7   of an assignment dated January 1, 2013 and recorded in the Dallas County under instrument No.

8   201300052007, the assignment was signed by an employee of NTC posing as an officer of

9   MERS alleging to assign all beneficial interest in the mortgage to Chase. Plaintiff reserves the

10  right to amend this complaint to add additional facts when ascertained.

11      4.    Defendant Caliber Home Loans, Inc. (hereinafter "Caliber") is a Delaware

12  corporation with its principal place of business located at 3701 Regent Boulevard, Irving, TX,

13  75063, Caliber's registered agent is the Corporation Trust Company, 1209 N. Orange Street,

14  Wilmington, Delaware 19801. Caliber is a servicer of mortgage loans and claims an interest in

15  the deed of trust by way of an assignment dated July 11, 2013, from JPMorgan Chase Bank,

16  N.A. to Caliber.

17      5.    Defendant Federal Home. Loan Mortgage Corporation (hereinafter "Freddie

18  Mac") has a principal place of business at 8200 Jones Branch Drive, McLean, Virginia 22102.

19  Freddie Mac was initially chartered by Congress to facilitate the expansion and improve the

20  geographic distribution of credit for residential mortgages. Federal Home Loan Mortgage Act,

21  Pub.L. No. 91-351 Title III, s. 302, 84 Stat. 451 (1970) (codified as 12 U.S.C. §§ 1451-59). At

22  the time of its initial charter, Freddie Mac was entitled to the priorities and immunities of the

23  United States, including tax exempt status. However, in 1989, Congress amended Freddie Mac's

1   enacting statute and significantly altered both its corporate structure and its relationship with the

2   United States. Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No.

3   101-73, s. 731, 103 Stat. 430 (codified at 12 U.S.C. §§ 1811-1833e) (hereinafter "FIRREA")

4         6.     FIRREA amendments privatized the management and operations of Freddie

5   Mac. Freddie Mac is now owned by private shareholders. None are government officials. 12

6   U.S.C. § 1452(a)(2)(A).

7         7.     Freddie Mac is being named defendant in the instant lawsuit as a result of its

8   claim to own the loan and as such the rescission mailed to Freddie Mac directly effected this

9   defendant. On or about April 16, 2015, Plaintiff entered his personal information into Freddie

10   Mac website and as a result Freddie Mac responded in affirmative that it does allegedly own

11   Plaintiff's loan.

12         8.     Defendant Connie J. Vandergriff, (hereinafter "Vandergriff ") is an attorney in the

13   State of Texas, Vandergriff on behalf of Caliber files boiler plate court approved Rule 736

14   foreclosure complaints and enters into litigation in opposition to homeowners, executes and

15   records documents in state court tortuously injuring Plaintiff by its own conduct and the conduct

16   of their client(s) in violation of 15 U.S.C. 1640 and 15 U.S.C. 1611. The law offices of

17   Vandergriff are at 15000 Surveyor Blvd., Suite 100, Addison, Texas 75001.

18         1.     Vandergriff by association in fact and as part of the *modus operandi* of the

19   Ogden-MERS®-Chase-Caliber false "lender" representing mortgage servicers and intentionally

20   with full knowledge offer false complaints and false arguments, based on verifications of false

21   facts and on falsely created, executed and recorded documents.

22         2.     The core of the Vandergriff activity in addition to foreclosing on innocent

23   homeowners is the creation of fraudulent documents, which in the judicial foreclosure on the

1  subject real estate, amounts to documents, from but not limited to the Application for an

2  Expedited Order under Rule 736 - Complaint, false affidavits/certifications, misrepresentations

3  filed in the District Court of Dallas County Case No. DC 15-13444, *alleging to represent a Non*

4  *creditor falsely claiming to be secured creditor.*

5        3.    Whenever an act or omission of a corporation or business entity is alleged in this

6  Complaint, the allegation shall be deemed to mean and include an allegation that the corporation

7  or business entity acts or omits to act through its authorized officers, directors, agents, servants,

8  and/or employees, acting within the course and scope and or abuse of their duties, that the act or

9  omission is authorized by corporate managerial officers or directors, and that the act or omission

10  is ratified by the officers and directors of the corporation or business entity, where so reasonably

11  stated, implied and/or inferred.

12        4.    Any allegation about acts of any corporate or other business means that the

13  corporation or other business did the acts alleged through its officers, directors, employees,

14  agents and/or representatives while they are acting within the actual or ostensible scope of or

15  abuse of their authority where so reasonably stated, implied and/or inferred.

16        5.    At all relevant times, defendants commit the acts, cause or direct others to commit

17  the acts, or permit others to commit the acts alleged in this complaint. At all relevant times,

18  defendants know or realize that they are engaging in or planning to engage in the violations of

19  the laws, the laws of the United States, and Plaintiff's Property Right of Citizens alleged in this

20  Complaint.

21        6.    Knowing or realizing that defendants are engaging in or planning to engage in

22  unlawful acts nevertheless engage in and/or facilitate the commission of those unlawful acts.

23  Defendants intend to and do engage in and/or encourage, facilitate, and/or assist in the

1   commission of the unlawful acts, and thereby commit and/or aid and abet others in the unlawful

2   violations of Federal law and Plaintiff's Rights under Federal Laws.

3        7.     Plaintiff invokes Federal Rules of Evidence to govern these proceedings and

4   offers into evidence file the exhibits attached and incorporated hereto pursuant to Federal Rules

5   of Evidence.

6   ## IV. <u>FACTUAL ALLEGATIONS</u>

7        8.     On February 24, 2004, Plaintiff, in anticipation of a home loan in the amount of

8   $320,000.00, surrenders to Ogden for safe keeping a Texas Home Equity Note and a Deed of

9   Trust on Plaintiff's personal dwelling, which makes the transaction a consumer credit transaction

10  within the meaning of TILA, 15 U.S.C. §1602 and Regulation Z § 226.26, a copy of the original

11  Note **Exhibit A** and Security instrument **Exhibit B** are attached and incorporated hereto by

12  reference.

13       9.     On February 24, 2004 to present, Ogden, their agents and their known and

14  unknown successors and assigns violated multiple counts of Truth in Lending Act by failing to

15  disclose to Plaintiff who the true lender is and using subterfuge to hide the fact that Ogden acted

16  as a "lender" at closing and were paid to pose as the "lender" when in fact the Ogden failed to

17  fund the promised loan and as such did not consummate the transaction. Ogden's  Disclosure

18  Statement being the "lender" was not "accurate." See 15 U.S.C. §1638(a)(1). Ogden never

19  funded the promised loan.

20       10.    **As a result the transaction between Plaintiff and Ogden was never**

21  **consummated.** The date of consummation would be when the loan was funded if it was funded

22  by the alleged "lender" named as such in the note and the liability of the borrower first arose as a

23  result of the funding by the said "lender". In the first year of law school lawyers that are now

1   judges are taught *that the liability of the borrower does not commence when he signs paperwork*;

2   the liability arises when the borrower gets the money. Starting on February 24, 2004 until present

3   the anticipated funding never came from Ogden. If the funding didn't come from the party

4   claiming to have rights to enforce the loan by virtue of what was written on the note or security

5   instrument, then *nothing plus nothing equals nothing*. The limitation on the right to rescind is

6   extended indefinitely. Under federal law, the security the Note and instrument are now

7   extinguished and any rights under the Note and Security instrument have terminated.

8        11.    The Security instrument lists as collateral the real property and unlawfully creates

9   a lien alleging performance under the Note. (See Exhibit B)

10        12.    On April 18, 2015, Plaintiff sent by certified mail return receipt #

11   70132630000032263703 and regular mail a Notice of Rescission to Ogden as required to effect

12   the requirements to rescind under TILA. The certified mail came back as unclaimed, the regular

13   mail did not come back and presumed delivered. The Notice is attached and incorporated hereto

14   as **Exhibit C**. Ogden received the Notice of rescission on or about April 19, 2015 and April 24,

15   2015.

16        13.    At least 20 days passed from the rescission and receipt of notice without Ogden,

17   their agent(s) and/or principal contesting the rescission by filing, as required within 20 days of

18   receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission.

19   As a result Ogden is (a) in violation of statute, subject to the instant enforcement suit on their

20   duties under rescission (b) Ogden waived any objection to the rescission that should have been

21   brought as their own lawsuit within the 20 days.

22        14.    As a result of Ogden silence, the rescission is effected and fully enforced and

23   Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation

on the right to rescind was extended indefinitely *as the transaction was never consummated* between Plaintiff and an unknown party lender. Under federal law, the Note and Security instrument are now extinguished and any rights under the Note and Security instrument have terminated.

15.   On April 18, 2015, Plaintiff sent by certified mail return receipt #70122920000142311814 a Notice of Rescission to MERS as required to affect the requirements to rescind under TILA. The Notice is attached and incorporated hereto as **Exhibit C.** MERS received the Notice of rescission on April 23, 2015. Certified mail and Return Receipt and USPS.com confirmation is attached and incorporated hereto as **Exhibit D**.

16.   At least 20 days passed from the rescission and receipt of notice without MERS, their agent(s) and/or principal contesting the rescission by filing, as required within 20 days of receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission. As a result MERS is (a) in violation of statute, subject to the instant enforcement suit on their duties under rescission (b) MERS waived any objection to the rescission that should have been brought as their own lawsuit within the 20 days.

17.   As a result of MERS's silence, the rescission is effected and fully enforced and Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation on the right to rescind was extended indefinitely *as the transaction was never consummated* between Plaintiff and an unknown party lender. Under federal law, the Note and Security instrument are now extinguished and any rights under the Note and Security instrument have terminated.

18.   On April 18, 2015, Plaintiff sent by certified mail return receipt #70122920000142311821 a Notice of Rescission to Chase as required to affect the requirements

1    to rescind under TILA. The Notice is attached and incorporated hereto as **Exhibit C.** Chase

2    received the Notice of rescission on April 24, 2015. Certified mail and Return Receipt is attached

3    and incorporated hereto as **Exhibit E.**

4        19.     At least 20 days passed from the rescission and receipt of notice without Chase,

5    their agent(s) and/or principal contesting the rescission by filing, as required within 20 days of

6    receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission.

7    As a result Chase is (a) in violation of statute, subject to the instant enforcement suit on their

8    duties under rescission (b) Chase waived any objection to the rescission that should have been

9    brought as their own lawsuit within the 20 days.

10       20.     As a result of Chase's silence, the rescission is effected and fully enforced and

11    Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation

12    on the right to rescind was extended indefinitely *as the transaction was never consummated*

13    between Plaintiff and an unknown party lender. Under federal law, the Note and Security

14    instrument are now extinguished and any rights under the Note and Security instrument have

15    terminated.

16       21.     On April 18, 2015, Plaintiff sent by certified mail return receipt

17    #70122920000142311838 a Notice of Rescission to Caliber as required to affect the

18    requirements to rescind under TILA. The Notice is attached and incorporated hereto as **Exhibit**

19    **C.** Caliber received the Notice of rescission on April 22, 2015. Certified mail and Return Receipt

20    is attached and incorporated hereto as **Exhibit F.**

21       22.     At least 20 days passed from the rescission and receipt of notice without Caliber,

22    their agent(s) and/or principal contesting the rescission by filing, as required within 20 days of

23    receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission.

1  As a result Caliber is (a) in violation of statute, subject to the instant enforcement suit on their

2  duties under rescission (b) Caliber waived any objection to the rescission that should have been

3  brought as their own lawsuit within the 20 days.

4       23.    As a result of Caliber's silence, the rescission is effected and fully enforced and

5  Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The limitation

6  on the right to rescind was extended indefinitely *as the transaction was never consummated*

7  between Plaintiff and an unknown party lender. Under federal law, the Note and Security

8  instrument are now extinguished and any rights under the Note and Security instrument have

9  terminated.

10       24.    On April 18, 2015, Plaintiff sent by certified mail return receipt

11  #70122920000142311838 a Notice of Rescission to Freddie Mac as required to affect the

12  requirements to rescind under TILA. The Notice is attached and incorporated hereto as **Exhibit**

13  **C.** Freddie Mac received the Notice of rescission on April 21, 2015. Certified mail and Return

14  Receipt is attached and incorporated hereto as **Exhibit G.**

15       25.    At least 20 days passed from the rescission and receipt of notice without Freddie

16  Mac, their agent(s) and/or principal contesting the rescission by filing, as required within 20 days

17  of receipt of the notice, judicially new lawsuit challenging the content of the Notice of

18  Rescission. As a result Freddie Mac is (a) in violation of statute, subject to the instant

19  enforcement suit on their duties under rescission (b) Freddie Mac waived any objection to the

20  rescission that should have been brought as their own lawsuit within the 20 days.

21       26.    As a result of Freddie Mac's silence, the rescission is effected and fully enforced

22  and Plaintiff is entitled to the benefits and reimbursements accorded under the TILA. The

23  limitation on the right to rescind was extended indefinitely *as the transaction was never*

1  *consummated* between Plaintiff and an unknown party lender. Under federal law, the Note and

2  Security instrument are now extinguished and any rights under the Note and Security instrument

3  have terminated.

4  V. **FIRST CAUSE OF ACTION FOR ENFORCEMENT OF RESCISSION UNDER**

5  **15 U.S.C. § 1635**

6  27.    Plaintiff alleges and incorporates by reference each of the preceding paragraphs as

7  if fully set forth in this paragraph.

8  28.    This consumer credit transaction was subject to Plaintiff's right of rescission. 15

9  U.S.C. § 1635 and Regulation Z § 226.23.

10  29.    15 U.S.C. § 1635

11  **(a) Disclosure of obligor's right to rescind**

12  "Except as otherwise provided in this section, in the case of any consumer
13  credit transaction (including opening or increasing the credit limit for an
14  open end credit plan) in which a security interest, including any such
15  interest arising by operation of law, is or will be retained or acquired in
16  any property which is used as the principal dwelling of the person to
17  whom credit is extended, the obligor shall have the right to rescind the
18  transaction until midnight of the third business day following the
19  **consummation of the transaction**" [bold emphases added]
20
21  30.    Plaintiff has a continuing right to rescind the transaction until and up to three

22  years *after consummation* of the transaction, pursuant to 15 U.S.C. § 1635(a) and Regulation Z

23  § 226.23(a)(3).

24  31.    15 U.S.C. 1635(a) is clear "any consumer credit transaction" that pertains to the

25  principal dwelling "**shall have the right to rescind the transaction**".

26  32.    On February 24, 2004 to present, in violation of 15 U.S.C. §1635, Ogden and its

27  successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to

Plaintiff the true lender and using subterfuge to hide the fact that the "lender" at closing i.e. Ogden was paid to pose as a lender when in fact the lender is undisclosed unregistered third party. Ogden Disclosure Statement being the lender is not "accurate." **No consummation of the transaction between Ogden and Plaintiff took place as one party to the transaction, the actual lender and counterparty to the contract, is not disclosed to Plaintiff.** The limitation on the right to rescind is extended indefinitely. Under federal law, the Note and Security instrument are now extinguished and the rights under the security instrument have terminated.

33.     Defendants failed to deliver all material disclosures required by the Truth in Lending Act and Regulation Z, 15 U.S.C. § 1635(a), 15 U.S.C. § 1638(a)(1) and Regulation Z § 226.23(b).

34.     On April 18, 2015, Plaintiff rescinded the entire transaction by sending a Notice of Rescission to Defendants as required effecting the requirements to rescind under TILA. Defendants received the Notice of rescission on between April 21, 2015 and April 24, 2015.

35.     The cancellation of the Note and Security instrument has already happened by operation of law on April 18, 2015. The rescission is effective, the Note and Security instrument are void as of the date of mailing of the notice of rescission. The instant suit is to enforce the return of the note marked cancelled, reconveyance/cancellation of the Security instrument and return of all monies paid.

36.     Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower 'shall have the right to rescind ... by notifying the creditor, in accordance with regulations of the Board, of his intention to do so'. The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind.

37.     Defendants unlawfully collected on a debt that was null and void at inception that now must be returned to Plaintiff plus costs, plus interest, plus escrow charges, closing costs, etc.

38.     Defendants are bound to 15 U.S.C. §1635 that cancels the note and voids the security interest - Security instrument recorded in the Official Records of Dallas County on March 9, 2004 as Instrument No. 4482665, Book No. 046, Pages 2491 through 2509 .

39.     Plaintiff demands the Note be returned marked: "Cancelled" thereby, effectuating the Nullification and Voiding of Note and Security instrument and entered in the Dallas County Records as such, with effective date – *of 04/18/2015*.

40.     Plaintiff demands return of *all* funds paid by Plaintiff to any and all parties such as servicers of the alleged loan. The funds remain unaccounted for by any defendant in spite of the clear lawfully implemented Rescission of the Note by Plaintiff.

41.     Pursuant to 15 U.S.C. 1640(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person rescinded under section 1635 of this title, the costs of the action, as determined by the court are recoverable.

42.     Plaintiff may amend this complaint. Filing at this time is to preserve the time limit for exercise of right under 1635(f)(3) prescribed by TILA. (3) ... upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

43.     By reason of the aforesaid violations of the Act and Regulation Z, defendant is liable to plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640.

## VI. SECOND CAUSE OF ACTION FOR ENFORCEMENT OF RESCISSION UNDER 15 U.S.C. 1638(a)(1)

44.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as

1    if fully set forth in this paragraph.

2       45.     15 U.S.C. 1638(a)(1) Transactions other than under an open end credit plan

3         (a)Required Disclosures By Creditor. For each consumer credit transaction
4         other than under an open end credit plan, the creditor shall disclose each of
5         the following items, to the extent applicable:
6            (1) The identity of the creditor required to make disclosure.

7

8       46.     On February 24, 2004, Ogden and its successors and assigns violated multiple

9 counts of Truth in Lending Act and including but not limited to 15 U.S.C. 1638(a)(1) by failing

10 to consummate the transaction and disclose to Plaintiff the true lender and using subterfuge to

11 hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is

12 undisclosed unregistered third party. Ogden Disclosure Statement being the lender pursuant to 15

13 U.S.C. 1638(a)(1) is not "accurate." **No consummation of the transaction between Ogden and**

14 **Plaintiff took place as one party to the transaction, the actual lender, was not disclosed to**

15 **Plaintiff.** The limitation on the right to rescind is extended indefinitely.

16       47.     On April 18, 2015, Plaintiff rescinded the entire transaction by sending a Notice

17 of Rescission to defendants as required effecting the requirements to rescind under TILA.

18 Defendants received the Notice of rescission on between April 21 and April 24, 2015. Under

19 federal law, the Note and security instrument are now extinguished and the rights under the

20 security instrument have terminated.

21       48.     Defendant did not protest or contest this rescission notice as required under §

22 226.23(d)(2)(3) therefore the loan documents Note and Security instrument have been forfeited

23 and forever released by Defendant and any others involved by their failure to provide TILA

24 required disclosures and to challenge <u>within 20 days of tender of the rescission</u> of their

25 obligations under 226.23(d)(2)(3) by the end of the 20 day performance period ending on

26 *04/06/2015.* Therefore, under the law there is no enforceable Note or Security instrument.

## VII. THIRD CAUSE OF ACTION FOR ENFORCEMENT OF RESCISSION UNDER

## 12 C.F.R. § 226.23

49.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

50.     12 C.F.R. § 226.23 –

> **(2)** To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. **Notice is considered given when mailed**, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business. [emphases added]

51.     Pursuant to the notice of rescission and the fact that it IS effective upon mailing all Defendants have forfeited their right to challenge the Notice of Rescission.

52.     According to TILA, Reg. Z and the U.S. Supreme Court (Jesinoski v Countrywide Home Loans, Inc.) decision the rescission IS effective by operation of law the moment it is put in US Mail.

53.     There is no other interpretation of "effective" because the Supreme Court under the annoyed pen of Justice Scalia has said there is nothing to interpret. When the rescission was mailed it was effective BY OPERATION OF LAW.

54.     Notwithstanding that Plaintiff had full right to rescind the transaction and recall his loan documents back, Plaintiff does not have to be right to send it. THAT issue is left to the true creditors to allege in a lawsuit to vacate the rescission. And they must do so within 20 days.

55.     On April 18, 2015, Plaintiff effected the rescission by mailing the notice to Ogden as the agent and Freddie Mac as the alleged principal, who received the notice on April 21, 2015.

56.     Defendants are in violation of §226.23(b)(1)

Regulation Z §226.23(b)(1) "Notice *of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right*

*to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*

*(i)The retention or acquisition of a security interest in the consumer's principal dwelling.*
*(ii) The consumer's right to rescind the transaction.*
*(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
*(iv) The effects of rescission, as described in paragraph (d) of this section.*
*(v) The date the rescission period expires."*

49.     On February 24, 2004, to present, in violation of 15 U.S.C. §1635 and §226.23(b)(1), Ogden and its agents and/or successors and assigns violated multiple counts of Truth in Lending Act by failing to consummate the transaction and failing to disclose to Plaintiff the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is undisclosed unregistered third party. **No consummation of the transaction between Ogden and Plaintiff took place as one party to the transaction, the actual lender, was not disclosed to Plaintiff.** The limitation on the right to rescind is extended indefinitely. Under federal law, the Note and security instrument are now extinguished and the rights under the security instrument have terminated.

50.     At no time after the execution of the Note and the Security instrument *were* closing documents called "material disclosures" regarding consummation as described in TILA given to or made available to the Plaintiff.

51.     The issue of Plaintiff's Right to rescind the alleged loan and its cancellation as alleged herein, under 12 C.F.R. 226.23(h) has been settled by operation of law.

52.     During the 20 days, the duties of the parties on the notice are clear: (1) return the canceled note (2) file a reconveyance/cancellation of Security instrument and (3) return all

1   money paid by Plaintiff. If the patties to the notice fail to do that they have violated the statute.

2       53.    Defendant(s) and their successors and assigns have violated the statute, and failed

3   to (1) return the canceled note (2) file a reconveyance/cancellation of Security instrument and (3)

4   return all money paid by Plaintiff.

5       54.    If defendants take issue with whether the rescission should be effective this way,

6   they would have had to file a lawsuit within the 20 days allowed for performing the duties under

7   TILA (see above). If they want to say the statute of limitations has run, they must do it in a

8   lawsuit filed within the 20 days. Otherwise the window closes and in this case it did close.

9       55.    The Defendants in this action neither individually or jointly and/or severally nor

10  their agents or assigns by their non-performance of C.F.R. 226.23(d)(2) within the 20 day

11  performance period following tender of the Rescission as provided in 12 C.F.R. 226.23(d)(2)

12  have as a matter of law waived any defense or claims which effects the loan cancellation.

13      56.    Thus, the right of defendants to challenge the Rescission by Plaintiff is waived

14  and legally barred by operation of the statute of Limitation inherent in TILA which in pertinent

15  part states:

16          *12 CFR 226. 23(d){2)*
17          Within 20 calendar days after receipt of a notice of rescission, the creditor
18          **shall return any money or property that has been given to anyone in**
19          **connection with the transaction** and shall take any action necessary to
20          reflect the termination of the security interest. [bold emphases added]
21
22      57.    From April 24, 2015 to present the return of the Note has NOT been effected by

23  any defendant to date and the sums remain unpaid.

24      58.    The reconveyance/cancellation of the Security instrument has NOT been effected

25  by Defendants to date.

26      59.    Defendants are bound to the agreement with the Federal Reserve Board and

1    Regulation Z that cancels the note and voids the Security instrument recorded in the Official

2    Records of Dallas County on March 9, 2004 as Instrument No. 4482665, Book 046, Pages 2491

3    through 2509.

4        60.      Plaintiff demands the Note be returned marked: "Cancelled" thereby, effectuating

5    the Nullification and Voiding of the Security instrument and entered in the Dallas County

6    Records as such, effective with the *date – of 04/18/2015.*

7        61.      Plaintiff demands return of funds paid by Plaintiff to any and all parties such as

8    servicers of the alleged loan. The funds remain unaccounted for by defendants in spite of the

9    clear lawfully implemented Rescission of the Note and Security instrument by Plaintiff.

10       62.      Plaintiff may amend this complaint. Filing at this time is to preserve the time limit

11    for exercise of right under 15 U.S.C. § 1635(f)(3) and 15 U.S.C. § 1640 prescribed by TILA. (3)

12    ... upon the expiration of one year following the conclusion of the proceeding, or any judicial

13    review or period for judicial review thereof, whichever is later.

14       63.      By reason of the aforesaid violations of the Act and Regulation Z, defendants are

15    liable to Plaintiff in the amount of twice the finance charge, actual damages to be established at

16    trial, and costs in accordance with 15 U.S.C. § 1640.

17       64.      In the instant case where Plaintiff enter into a contract based on a belief as to a

18    intentionally misrepresented material fact underlying the terms of the agreement, the contract is

19    rescinded to the extent that there was no "meeting of the minds" necessary to validate the

20    agreement.

21                **VIII. FOURTH CAUSE OF ACTION – THE TRANSACTION WAS NEVER**

22                                 **CONSUMMATED**

23       65.      Plaintiff alleges and incorporates by reference each of the preceding paragraphs as

24    if fully set forth in this paragraph.

66.     Under the Truth in Lending Act, 15 U.S.C. §1635, et seq. and 12 C.F.R 226.23, et seq. Plaintiff is entitled to rescind the promissory Note and Security instrument per 15 U.S.C. §1635 as alleged, *supra*.

67.     Pursuant to 15 U.S.C. § 1635(f) "An obligor's right of rescission shall expire three years after the date of consummation of the transaction…"

68.     Pursuant to 12 C.F.R. § 226.2(a)(13).

      **13) *Consummation*** means the time that a consumer becomes contractually obligated on a credit transaction.

69.     Under Regulation Z, which specifies a lender's disclosure obligations, "consummation" of the loan occurs when the borrower is "contractually obligated." 12 C.F.R. §226.2(a)(13).

70.     The point at which a "contractual obligation … is created" is a matter of **state law**. 12 C.F.R. pt. 226, Supp. 1 (Official Staff Interpretation), cmt. 2(a)(13). Generally under Texas law, a contract is formed when there are (1) two or more parties capable of contracting, (2) mutual consent, (3) a lawful object, and (4) sufficient consideration.

71.     Under TILA, the Courts must look to state law in determining when a borrower becomes contractually obligated on a loan. At the very least, before you can have a contract, there must be specifically identified parties to the contract (meaning an identified actual lender and identified borrower) – "parties capable of contracting" as set forth above and sufficient consideration.

72.     On February 24, 2004, Ogden posed as a loan "originator" posing as a "lender" and as the loan originator did not affect or funded the actual loan but rather Ogden the purported originating "lender", purporting to contract to "lend" Plaintiff money, did not actually lend Plaintiff any money or credit. Ogden Disclosure Statement being a lender was not "accurate" in

violation of 18 U.S.C. 1638(a). Ogden misrepresented its status as the "lender" and did nothing more than earn a commission, for placing Plaintiff's loan documents in a loan pool, and failing to consummate the transaction.

73.     On February 24, 2004, Ogden misrepresented to Plaintiff that it was the "Lender", the material misrepresentation was made and it was not in accordance with the facts, the misrepresentations included the meaning of words and conduct that concealed and/or did not disclose a material fact.

74.     It is fraudulent if the maker intends for the assertion to induce assent and knows it is incorrect. Plaintiff is justified to bring this action as he has and is relying on material misrepresentations and/or fraudulent assertions. Courts recognize the date of signing a binding loan contract as the date of consummation when the lender is *identifiable and after the funding occurred by the said identified lender*.

75.     Under the circumstances of the instant case, the loan is not "consummated" until the actual lender is identified and would be able to show that it actually funded the loan, because until that point there is no legally enforceable contract.

76.     In the instant case where Plaintiff attempted to enter into a contract based on a belief as to an intentionally misrepresented material fact underlying the terms of the agreement, the contract is rescinded to the extent that there was no "meeting of the minds" necessary to validate the agreement.

77.     Ogden acted as intermediary "originator" who made false representations to the effect that they Ogden is "lending money" and is Plaintiff's "lender", the false representations and failure to consummate the transaction does not set the three year TILA rescission clock in motion.

1    78.    Due to the fact that the funding of the alleged "loan" is NOT identified, the loan

2    has not "consummated" and under TILA and the three year right to rescind remains open.  That

3    is TRUTH IN LENDING, which is the whole point of TILA in the first place. All defendants are

4    hereby given a notice pleading is required under TILA claims.

5    ## IX. FIFTH CAUSE OF ACTION FOR VIOLATIONS OF 15 U.S.C. 1611

6

7    79.    Plaintiff alleges and incorporates by reference each of the preceding paragraphs as

8    if fully set forth in this paragraph.

9    80.    15 U.S. Code § 1611 - Criminal liability for willful and knowing violation.

10   "Whoever willfully and knowingly

11   **(1)** gives false or inaccurate information or fails to provide information
12   which he is required to disclose under the provisions of this subchapter
13   or any regulation issued thereunder,
14   **(2)** uses any chart or table authorized by the Bureau under section 1606 of
15   this title in such a manner as to consistently understate the annual
16   percentage rate determined under section 1606 (a)(1)(A) of this title,
17   or
18   **(3)** otherwise fails to comply with any requirement imposed under this
19   subchapter, shall be fined not more than $5,000 or imprisoned not
20   more than one year, or both."

21

22   81.    On April 18, 2015, Plaintiff sent by certified mail return receipt a Notice of

23   Rescission to Defendants as required to affect the requirements to rescind under TILA. The

24   Notice is attached and incorporated hereto as Exhibit C. Defendants received the Notice of

25   rescission on between April 21, 2015 and April 24, 2015.

26   82.    Caliber have acknowledged the Notice of Rescission by sending Plaintiff letter

27   dated May 9, 2015, the letter is attached and incorporated hereto as **Exhibit H,** yet with full

28   knowledge of the rescinded loan documents Ogden proceeded in violation of 15 U.S.C. § 1611 to

29   file false pleadings in District Court of Dallas i.e. Application for Expedited Order, which was

1   received by the court on November 3, 2015. First four pages of the filing are incorporated hereto
2   as **Exhibit I.**
3       83.     Caliber intended to and did engage in and/or encourage, facilitate, and/or assist in
4   the commission of the unlawful acts, and thereby committed and/or aided and abetted others and
5   specifically all named defendants in the unlawful conduct.
6       84.     Caliber continues to implement filings in the state court misleading the court as to
7   the status of the security instrument knowing full well they have no authority to do so, yet
8   intentionally and with malice continues to carry out unlawful acts against Plaintiff.
9       85.     Under the Truth in Lending Act failure to satisfy the Act subjects a lender or their
10  agent to criminal penalties for noncompliance, see 15 U.S.C. §1611. Plaintiff has a private right
11  of action under 15 U.S.C. §1611 and Section 1640(e) provides that an action for such damages
12  "may be brought" within one year after a violation of the Act.
13      86.     On April 18, 2015 to present, Caliber violates 15 U.S.C. § 1611.
14      87.     Defendant is hereby given a notice pleading as is required under TILA claims.

15
16  ## X. SIXTH CAUSE OF ACTION AS TO DEFENDANT CONNIE J. VANDERGRIFF
17  ## FOR VIOLATIONS OF 15 U.S.C. 1611
18
19      88.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as
20  if fully set forth in this paragraph.
21      89.     15 U.S. Code § 1611 - Criminal liability for willful and knowing violation.
22      Whoever willfully and knowingly
23          **(1)** gives false or inaccurate information or fails to provide information
24              which he is required to disclose under the provisions of this subchapter
25              or any regulation issued thereunder,

(2) uses any chart or table authorized by the Bureau under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606 (a)(1)(A) of this title, or

(3) otherwise fails to comply with any requirement imposed under this subchapter, shall be fined not more than $5,000 or imprisoned not more than one year, or both."

90.    On April 18, 2015, Plaintiff sent by certified mail return receipt a Notice of Rescission to Defendants as required to affect the requirements to rescind under TILA. The Notice is attached and incorporated hereto as Exhibit C. Defendants received the Notice of rescission on between April 21, 2015 and April 24, 2015.

91.    Vandergriff knew that the notice was given to the principal and as such is given to Vandergriff - an agent.

92.    Vandergriff intended to and did engage in and/or encourage, facilitate, and/or assist in the commission of the unlawful acts, and thereby committed and/or aided and abetted others and specifically all named defendants in the unlawful conduct.

93.    Vandergriff continues to implement filings in the state court misleading the courts as to the status of the note and the deed of trust knowing full well she has no authority to do so, yet intentionally and with malice continues to do so her unlawful acts against Plaintiff.

94.    Under the Truth in Lending Act failure to satisfy the Act subjects a lender or their agent to criminal penalties for noncompliance, see 15 U.S.C. §1611. Plaintiff has a private right of action under 15 U.S.C. §1611 and Section 1640(e) provides that an action for such damages "may be brought" within one year after a violation of the Act, but that a borrower may assert the right to damages "as a matter of defense by recoupment or set-off " in a collection action brought by the lender even after the one year is up.

95.    Defendants are hereby given a notice pleading is required under TILA claims.

## XI. SEVENTH CAUSE OF ACTION – ENFORCEMENT OF RESTITUTION
## 12 C.F.R. § 1026.23(d)(2)

96.     Plaintiff alleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

97.     Under the Truth in Lending Act, 15 U.S.C. §1635, et seq. and 12 C.F.R 226.23, et seq. Plaintiff is entitled to rescind the promissory Note and Security instrument per 15 U.S.C. §1635 as alleged, *supra.*

98.     On April 18, 2015, Plaintiff properly and effectively exercised the right to rescind by sending the Notice of Rescission to defendants via Certified Return Receipt U.S. Mail.

99.     Plaintiff alleges that all defendants refused to carry out the *command* of the law upon receiving the rescission, continue to act as if the rescission was never sent and defrauded Plaintiff as a result by damaging his ownership rights, Property Rights of Citizens, credit and right to act in violation of the act and Plaintiff is entitled to damages and an order to return the original Note marked "cancelled", record reconveyance/cancellation of the Security instrument and with restitution of all sums paid by Plaintiff to anyone claiming to be a "lender" and/or a servicer and/or their agents.

100.     That all assets Plaintiff proves have been paid under the Note be restored forthwith to Plaintiff in the sum of not less than $398,286.94 including all closing costs not less than $7,838.04 and for statutory assessments, attorney fees and costs associated in both damages, and relief TILA calls out.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against all defendants as follows:

1. Return of the Original Note in the amount of $320,000.00.00 marked Cancelled;

2. Return of the Original Security instrument;

3. Filing Reconveyance/cancellation of Security instrument recorded on March 9, 2004 as Instrument No. 4482665, in the Records of Dallas County;

4. Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(I);

5. Award statutory damages in the amount of twice the finance charge not to exceed $1000 per violation or the statutory maximum whichever is greater in accordance with 15 U.S.C. § 1640(a)(2);

6. Award plaintiff costs and reasonable attorney's fees in accordance with 15 U.S.C.§ 1640;

7. Award Plaintiff costs and fees in accordance with 15 U.S.C.§ 1640 for defending against all actions in state and/or federal courts to protect his property;

8. For the Note and Security instrument and Restoration of money's kept to which defendants are not entitled in the sum of $398,286.94;

9. Caliber shall be fined $5,000.00 for violations of 15 U.S.C. § 1611.

10. Vandergriff shall be fined $5,000.00 for violations of 15 U.S.C. § 1611.

11. For Compensatory damages;

12. For Legal Fees, Court Costs;

13. For Actual damages.

14. For Treble damages.

Dated: December 18, 2015

Respectfully submitted by:

_Bryan W. Wilder_
Bryan W. Wilder
1317 Cedar Hill Avenue
Dallas, Texas 75208
Tel. 214-505-6938
bryan@fruitsource.net

379111535

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6),**
**ARTICLE XVI OF THE TEXAS CONSTITUTION**

MIN: ███████████

# TEXAS HOME EQUITY NOTE
## (Fixed Rate - First Lien)

February 24, 2004                    Austin                    Texas

*[Date]*                    *[City]*                    *[State]*

1317 Cedar Hill Avenue, Dallas, TX 75208

*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit"). In return for the Extension of Credit that I have received evidenced by this Note, I promise to pay U.S. $ 320,000.00                                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is                    Ogden Ragland Mortgage

I will make all payments under this Note in the form of cash, check, or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The property described above by the Property Address is subject to the lien of the Security Instrument executed concurrently herewith (the "Security Instrument").

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   4.875        %. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or Prepayment of the Extension of Credit, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the Principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the       1st       day of each month beginning       April 2004      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on       March 1       ,   2019   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at       Flagstar Bank, F.S.B., 5151 Corporate Drive- Mail Code 1/125, Troy,

MI 48098                                                                                                    Loan No: ███████

Texas Home Equity Note (Fixed Rate - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3244.1 01/01 (Rev. 10/03)
—THE COMPLIANCE SOURCE, INC.—          Page 1 of 4          30E12601TX 08/00 Rev. 10/03
www.compliancesource.com                    ©2003, The Compliance Source, Inc.

42

**Exhibit A**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $          2,509.75

**4.      BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments.

**5.      LOAN CHARGES**
All agreements between Note Holder and me are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish any right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice form the Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

**6.      BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of          15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means. This Note may not be accelerated because of a decrease in the market value of the property described above or because of the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as

Loan No: ▬▬▬▬

Texas Home Equity Note (Fixed Rate - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 2 of 4

Form 3244.1  01/01 (Rev. 10/03)
3IE13001TX 02/00 Rev. 10/03
©2003, The Compliance Source, Inc.





Exhibit A

described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E)  Payment of Note Holder's Costs and Expenses

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees.  I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

### 7.    GIVING OF NOTICES

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by  delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.  However, if the purpose of the notice is to notify Note Holder of failure to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

### 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

    Subject to the limitation of personal liability described below, each person who signs this Note is responsible for ensuring that all of the my promises and obligations in this Note are performed, including the payment of the full amount owed.  Any person who takes over these obligations is also so responsible.

    I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud.  This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

    If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note.  This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

    If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

### 9.    WAIVERS

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have been paid.

### 10.    SECURED NOTE

    In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

        If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

        Loan No: ▬▬▬▬▬

Texas Home Equity Note (Fixed Rate - First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3244.1  01/01 (Rev. 10/03)
—THE COMPLIANCE SOURCE, INC.—    Page 3 of 4    HE13001TX 08/00 Rev. 10/03
www.compliancesource.com    ©2003, The Compliance Source, Inc.

**Exhibit A**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11.   **APPLICABLE LAW**
This Note shall be governed by the law of Texas and any applicable federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions in this Note will remain fully effective and enforceable.

12.   **NO ORAL AGREEMENTS**
THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

_____ (Seal)       _____ (Seal)
Bryan W. Wilder        -Borrower    Elizabeth M. Wilder      -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                            -Borrower

Pay to the order of              **PAY TO THE ORDER OF**          *[Sign Original Only]*
Flagstar Bank, F.S.B.            **FLAGSTAR BANK, F.S.B.**
                                 **WITHOUT RECOURSE**
without recourse
Ogden Ragland Mortgage
                                 Tamara Williams , Vice President
By _____ (signature)       Attorney-In-fact for:
Name                             Ogden-Ragland Mortgage, LLC
Title

Loan No: ▓▓▓▓▓▓▓

**Exhibit A**

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY:

JERALD [illegible], Bullhead [illegible]

BY:

JOHN P. KARCONI, First Vice President

**Exhibit A**

04 6F

LX8/

**2790254**

After recording please mail to:
P&P Services, Inc.

4482665        $48.00  Deed of Trust
03/09/04

*[Company Name]*
Final Documents
*[Name of Natural Person]*
4400 Alpha Road
*[Street Address]*
Dallas, TX 75244-4505
*[City, State  Zip Code]*

_____ *[Space Above This Line for Recording Data]* _____

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION
50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)      MIN: 100052599986249866

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION
FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC
RECORDS:  YOUR SOCIAL SECURITY NUMBER AND YOUR DRIVER'S LICENSE
NUMBER.**

This Security Instrument is not intended to finance Borrower's acquisition of the Property.

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10,
12, 17, 19, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in
Section 15.

**(A)**     **"Security Instrument"** means this document, which is dated   February 24, 2004   , together with all
Riders to this document.

**(B)**     **"Borrower"** is     Bryan W. Wilder and Elizabeth M. Wilder, husband and wife

.  Borrower is the trustor under this Security Instrument.

Loan No: 999862498
Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 1 of 17                                 HE14202TX 09/00 Rev. 11/03
www.compliancesource.com                                                                                ©2003, The Compliance Source, Inc

**Exhibit B**

**(C)**     **"Lender"** is   Ogden Ragland Mortgage

Lender is a          **corporation**          organized and existing under the laws of          **Texas**
Lender's address is    **1601 W 6th, Austin, TX 78703**
Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D)**     **"Trustee"** is     G. Tommy Bastian

Trustee's address is    **15000 Surveyor Blvd., Suite 100, Addison, TX 75001**

**(E)**     **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)**     **"Note"** means the promissory note signed by Borrower and dated     February 24, 2004
The Note states that Borrower owes Lender   **three hundred twenty thousand and NO/100ths**
                                                      Dollars (U.S. $ 320,000.00          )
plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**March  1, 2019**

**(G)**     **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)**     **"Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.

**(I)**     **"Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower *(check box as applicable)*:

☐ Texas Home Equity Condominium Rider                ☐ Other:
☐ Texas Home Equity Planned Unit Development Rider

**(J)**     **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)**     **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)**     **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.

<u>Loan No: 999862498</u>
Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—                    Page 2 of 17                      IE14202TX 09.00 Rev. 11/03
www.compliancesource.com                                                    ©2003, The Compliance Source, Inc.

**Exhibit B**

2004 046  02492

Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the **COUNTY** of **Dallas** :
*[Type of Recording Jurisdiction]*  *[Name of Recording Jurisdiction]*
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of    **1317 Cedar Hill Avenue**
*[Street]*
**Dallas** ,  Texas    **75208**    ("Property Address"):
*[City]*  *[Zip Code]*
    TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the

<u>Loan No: 999862498</u>

Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—    Page 3 of 17    HF14261TX 04-00 Rev. 11/03
www.compliancesource.com    ©2003, The Compliance Source, Inc

Exhibit B

"Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that

Exhibit B

2004 048 02494

any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Exhibit B

2004 046 02495

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Extension of Credit, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

**Exhibit B**

2004 046  02496

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process.

Loan No: 999862498

Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 7 of 17
MERS-Modified Form 3044.1 1/01
HE14202TX 09/00 Rev. 11/03
©2003, The Compliance Source, Inc.

**Exhibit B**

2004046 02497

Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

   9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

   Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   10.  **Assignment of Miscellaneous Proceeds; Forfeiture.**   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

   If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—                             Page 8 of 17                            HE14203TX 09/00 Rev. 11/03
www.compliancesource.com                                                                       ©2003, The Compliance Source, Inc.

**Exhibit B**

2004046 02498

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument

Loan No: 999862498

Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—                    Page 9 of 17                              HE14202TX 09/03 Rev. 11/03
www.compliancesource.com                                                                 ©2003, The Compliance Source, Inc.

**Exhibit B**

2004 046 02499

and to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

**Exhibit B**

2004 046 02500

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (e) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (e) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will

**Exhibit B**

2004046 02501

remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  For example, Section 50(a)6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution.  As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply.  Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.  Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.  If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such

**Exhibit B**

document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of

**Exhibit B**

2004046 02503

the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

22. **Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

24. **Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual

Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   MERS-Modified Form 3044.1 1/01<br>—THE COMPLIANCE SOURCE, INC.—   Page 14 of 17   HE14201TX 09/00 Rev. 11/03<br>www.compliancesource.com   ©2003, The Compliance Source, Inc

Exhibit B

2004046 02564

fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

———————————— [Signatures on Following Page] ————————————

Loan No: 999862498
Texas Home Equity Security Instrument (First Lien) - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    MERS-Modified Form 3044.1 1/01
—THE COMPLIANCE SOURCE, INC.—    Page 15 of 17    HE14201TX 09/00 Rev. 11/03
www.compliancesource.com    ©2003, The Compliance Source, Inc

Exhibit B

2004 046 02505

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT.   THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY.   YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

_____         _____
                                          Bryan W. Wilder            (Borrower)

Printed Name: BRYAN W. WILDER
              [Please Complete]

_____         _____
                                          Elizabeth M. Wilder         (Borrower)

Printed Name: Elizabeth M. Wilder
              [Please Complete]

                                          _____
                                                                     (Borrower)

                                          _____
                                                                     (Borrower)

——————————————— [Acknowledgment on Following Page] ———————————————

Exhibit B

2004046 02506

State of Texas                                        §
County of _Dallas_____                     §

    This instrument was acknowledged before me on _Feb ru a ry_ _2 4_ , _2 0 0 4_     (date),
by Bryan N. Wilder and Elizabeth M. Wilder

                                            (name or names of person or persons acknowledging).

```
DION LAMPE
Notary Public, State of Texas
My Commission Expires 07-16-07
```

(Personalized Seal)

                                     Signature of Officer

                                    _Escrow officer_
                                    Title of Officer

                           My Commission Expires:  _7-16-07_

Exhibit B

G. F. No. 2510000141

## Exhibit A

Lot 17, Block 1/4635, of THE FIRST INSTALLMENT OF EAST KESSLER PARK ADDITION, an Addition in DALLAS County, Texas, according to the map or plat thereof; recorded in Book 5, Page 292, of the Map Records of DALLAS County, Texas.

## Exhibit B

DALLAS DIST. CLERK
DALLAS CO. TEXAS

2004 MAR -8 PM 3: 06

FILED AND RECORDED
EARL BULLOCK, COUNTY

**Exhibit B**

2004 046 02509

Bryan W. Wilder
Elizabeth M. Wilder
1317 Cedar Hill Avenue
Dallas, Texas 75208

April 18, 2015

## NOTICE OF RESCISSION/CANCELLATION

**RE:   Loan Number: 9801458515**

Concerning the loan transaction, dated February 24, 2004, I hereby exercise my right pursuant to the Federal Truth in Lending Act, 15 U.S.C. §1635, Regulation Z § 226.23

On February 24, 2004 to present, Ogden Ragland Mortgage and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Bryan W. Wilder the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is undisclosed unregistered third party. The limitation on my right to rescind was extended indefinitely. Under federal law, the mortgage is now extinguished and your rights under the mortgage have terminated.

Federal Truth in Lending Act does not require me to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

(a) Ogden Ragland Mortgage failed to disclose to Bryan W. Wilder who the true lender is and as a result the transaction did not consummate;

(b) Ogden Ragland Mortgage did not fund the loan;

(c) Ogden Ragland Mortgage posed as a straw entity in dealing with me;

(d) I did not receive two signed copies of the loan documents from true lender;

(e) I did not receive two copies of a Right to Rescind/Cancel Notice as required by law from true lender. All consumers with rescission rights must receive two copies of signed loan documents and a Right to Rescind/Cancel Notice from lender.

Failure to disclose who the actual Lender is and failure to fund the loan and to provide to Bryan W. Wilder two copies of signed loan documents from the actual lender, the Notice of Rescission/Cancellation with its disclosed date when the rescission period expires on the Notice of the Right to Rescind/Cancel from the actual lender, grants to Bryan W. Wilder an absolute indefinite right of rescission.

**Exhibit C**

On February 24, 2004 to present, Ogden Ragland Mortgage and its successors and assigns violated multiple counts of Truth in Lending Act by failing to disclose to Elizabeth M. Wilder the true lender and using subterfuge to hide the fact that the "lender" at closing was paid to pose as the lender when in fact the lender is undisclosed unregistered third party. The limitation on my right to rescind was extended indefinitely. Under federal law, the mortgage is now extinguished and your rights under the mortgage have terminated.

Federal Truth in Lending Act does not require me to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

(a) Ogden Ragland Mortgage failed to disclose to Elizabeth M. Wilder who the true lender is and as a result the transaction did not consummate;
(b) Ogden Ragland Mortgage did not fund the loan;
(c) Ogden Ragland Mortgage posed as a straw entity in dealing with me;
(d) I did not receive two signed copies of the loan documents from true lender;
(e) I did not receive two copies of a Right to Rescind/Cancel Notice as required by law from true lender. All consumers with rescission rights must receive two copies of signed loan documents and a Right to Rescind/Cancel Notice from lender.

Failure to disclose who the actual Lender is and failure to fund the loan and to provide to Elizabeth M. Wilder two copies of signed loan documents from the actual lender, the Notice of Rescission/Cancellation with its disclosed date when the rescission period expires on the Notice of the Right to Rescind/Cancel from the actual lender, grants to Elizabeth M. Wilder an absolute indefinite right of rescission.

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind the transaction"*

Regulation Z §226.23(b)(v): *"The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following: (v) The date the rescission period expires."*

Any consumer "whose ownership interest is or will be subject to the security interest" has the right to rescind the transaction and to receive the disclosures.

Regulation Z §226.23(a)(1), *"In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction".*

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in*

Exhibit C

*accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*

*(i) The retention or acquisition of a security interest in the consumer's principal dwelling.*
*(ii) The consumer's right to rescind the transaction.*
*(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
*(iv) The effects of rescission, as described in paragraph (d) of this section.*
*(v) The date the rescission period expires."*

However, please be advised that this is not an exhaustive list, and I do not waive unlisted violations, as other violations may be uncovered through discovery.

Therefore, I have a continuing right to rescind the entire loan transaction, which I am exercising under the law.

Any security interest or other interest held by Ogden Ragland Mortgage; Freddie Mac; Mortgage Electronic Registration Systems, Inc.; Caliber Home Loans or other known and unknown entity is void upon my rescission. See 15 U.S.C. § 1635; Regulation Z § 226.23.

Please be advised that if you do not cancel the security interest dated 2-24-2004 and recorded in the Records of Real Property of Dallas County, Texas in Book 2004046, Page 02515 and return all consideration paid by me within twenty (20) calendar days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. §1640(a).

This Notice of Rescission/Cancellation was sent via Certified Mail Returned Receipt to the following business and address:

Ogden Ragland Mortgage
1601 W 6th Street
Austin, TX 78703
Sent via Certified RR Mail No.: 7013 2630 0000 3226 3703

Freddie Mac
8200 Jones Branch Drive
McLean, VA 22102-3110
Sent via Certified RR Mail No.: 7013 2630 0000 3226 3710

Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48501-2026
Sent via Certified RR Mail No.: 7012 2920 0001 4231 1814

**Exhibit C**

JPMorgan Chase Bank, N.A.
1111 Polaris Parkway
Columbus, OH 43240
Sent via Certified RR Mail No.: 7012 2920 0001 4321 1821

Caliber Home Loans, Inc.
c/o The Corporation Trust Company
1209 N Orange Street
Wilmington DE 19801-1120
Sent via Certified RR Mail No.: 7012 2920 0001 4231 1838


**I WISH TO CANCEL**                          **I WISH TO CANCEL**


Bryan W. Wilder                               Elizabeth M. Wilder


Exhibit C



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mortgage Electronic Registration
P.O. Box 2026
Flint, MI 48501-2026

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Michael LaLonde

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7012 2920 0001 4231 1814

PS Form 3811, July 2013   Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

FLINT MI 48501

| | | |
|---|---|---|
| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.49   04/18/2015 |

Sent To   MERS
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, August 2006   See Reverse for Instructions

7012 2920 0001 4231 1814

**Exhibit D**

# USPS.COM®

## USPS Tracking®


**Customer Service ›**
Have questions? We're here to help.


**Get Easy Tracking Updates ›**
Sign up for My USPS.

Tracking Number: 70122920000142311814

Updated Delivery Day: Thursday, April 23, 2015

## Product & Tracking Information

### Available Actions

Postal Product:
First-Class Mail®

Features:
Certified Mail™          Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 24, 2015 , 11:56 am | Delivered | FLINT, MI 48501 |

Your item was delivered at 11:56 am on April 24, 2015 in FLINT, MI 48501.

| | | |
|---|---|---|
| April 23, 2015 , 7:56 am | Out for Delivery | FLINT, MI 48502 |
| April 23, 2015 , 7:46 am | Sorting Complete | FLINT, MI 48502 |
| April 23, 2015 , 7:37 am | Arrived at Unit | FLINT, MI 48502 |
| April 22, 2015 , 11:10 pm | Departed USPS Facility | PONTIAC, MI 48340 |
| April 22, 2015 , 2:06 pm | Arrived at USPS Origin Facility | PONTIAC, MI 48340 |
| April 20, 2015 , 1:26 am | Departed USPS Facility | NTX P&DC |
| April 18, 2015 , 11:21 pm | Arrived at USPS Facility | NTX P&DC |
| April 18, 2015 , 5:56 pm | Departed Post Office | DALLAS, TX 75260 |
| April 18, 2015 , 3:25 pm | Acceptance | DALLAS, TX 75260 |

## Track Another Package

Tracking (or receipt) number

7012292000142311814          Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS ›



**Exhibit D**

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ $0.49 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $6.49 |

Postmark Here    04/18/2015

Sent To: J. P. Morgan Chase
Street, Apt No.; or PO Box No.
City, State, ZIP+4

7012 2920 0001 4231 1821

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

J. P. Morgan Chase, NA
1111 Polaris Pkwy
Columbus, Ohio 43240

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail®  ☐ Priority Mail Express™
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7012 2920 0001 4231 1821

PS Form 3811, July 2013          Domestic Return Receipt

**Exhibit E**

English          Customer Service          USPS Mobile                                    Register / Sign In

**USPS.COM**

# USPS Tracking®


Customer Service ›
Have questions? We're here to help.


Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 70122920000142311821

Updated Delivery Day: Friday, April 24, 2015

## Product & Tracking Information

Available Actions

Postal Product:　　　　　Features:
First-Class Mail®　　　　Certified Mail™　　　　Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 23, 2015 , 10:57 am | Delivered | COLUMBUS, OH 43240 |

Your item was delivered at 10:57 am on April 23, 2015 in COLUMBUS, OH 43240.

| | | |
|---|---|---|
| April 23, 2015 , 10:53 am | Arrived at Unit | WESTERVILLE, OH 43082 |
| April 22, 2015 , 10:10 pm | Departed USPS Origin Facility | COLUMBUS, OH 43218 |
| April 22, 2015 , 10:59 am | Arrived at USPS Origin Facility | COLUMBUS, OH 43218 |
| April 20, 2015 , 1:26 am | Departed USPS Facility | NTX P&DC |
| April 18, 2015 , 11:21 pm | Arrived at USPS Facility | NTX P&DC |
| April 18, 2015 , 5:56 pm | Departed Post Office | DALLAS, TX 75260 |
| April 18, 2015 , 3:25 pm | Acceptance | DALLAS, TX 75260 |

## Track Another Package
Tracking (or receipt) number

[ 70122920000142311821 ]          Track It

## Manage Incoming Packages
Track all your packages from a dashboard.
No tracking numbers necessary.
Sign up for My USPS ›



**Exhibit E**

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

x *Amy McLaren*   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery   APR 22 2015

1. Article Addressed to:

Caliber Home Loans
C/o The Corporation Trust Co
1209 N. Orange St
Wilmington, DE 19801-1120

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

   7012 2920 0001 4231 1838

PS Form 3811, July 2013   Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at our website at www.usps.com.

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.49 |

Sent To *Caliber Home Loans*

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006   See Reverse for Instructions

7012 2920 0001 4231 1838

---

**Exhibit F**

**USPS.COM®**

# USPS Tracking®


Customer Service ›
Have questions? We're here to help.


Get Easy Tracking Updates ›
Sign up for My USPS.

Tracking Number: 70122920000142311838

Updated Delivery Day: Wednesday, April 22, 2015

## Product & Tracking Information                     Available Actions

Postal Product:                 Features:
First-Class Mail®               Certified Mail™        Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 22, 2015 , 6:45 am | Delivered | WILMINGTON, DE 19801 |

Your item was delivered at 6:45 am on April 22, 2015 in WILMINGTON, DE 19801.

| | | |
|---|---|---|
| April 21, 2015 , 12:29 pm | Available for Pickup | WILMINGTON, DE 19899 |
| April 21, 2015 , 11:44 am | Arrived at Unit | WILMINGTON, DE 19801 |
| April 20, 2015 , 7:12 pm | Departed USPS Facility | WILMINGTON, DE 19850 |
| April 20, 2015 , 7:28 am | Arrived at USPS Origin Facility | WILMINGTON, DE 19850 |
| April 20, 2015 , 1:26 am | Departed USPS Facility | NTX P&DC |
| April 18, 2015 , 11:21 pm | Arrived at USPS Facility | NTX P&DC |
| April 18, 2015 , 5:56 pm | Departed Post Office | DALLAS, TX 75260 |
| April 18, 2015 , 3:23 pm | Acceptance | DALLAS, TX 75260 |

## Track Another Package

Tracking (or receipt) number

| 70122920000142311838 |     Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary. 

Sign up for My USPS ›

**Exhibit F**



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com℠

MCLEAN VA 22102

| | | |
|---|---|---|
| Postage | $ | $0.49 |
| Certified Fee | | $3.30 |
| Return Receipt Fee (Endorsement Required) | | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.49 |

Sent To   *Freddie Mac*

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions

7013 2630 0000 3226 3710

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Freddie Mac*
*8200 Jones Branch Dr.*
*McLean VA 22102-3110*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _FLACON_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)     7013 2630 0000 3226 3710

PS Form 3811, July 2013          Domestic Return Receipt

---

**Exhibit G**

English          Customer Service          USPS Mobile                                        Register / Sign In

# ⊠USPS.COM®

## USPS Tracking®



**Customer Service ›**
Have questions? We're here to help.



**Get Easy Tracking Updates ›**
Sign up for My USPS.

Tracking Number: 70132630000032263710

On Time
Expected Delivery Day: Tuesday, April 21, 2015

## Product & Tracking Information

### Available Actions

Postal Product:
First-Class Mail®

Features:
Certified Mail™          Return Receipt

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 21, 2015 , 9:05 am | Delivered | MC LEAN, VA 22102 |
| Your item was delivered at 9:05 am on April 21, 2015 in MC LEAN, VA 22102. | | |
| April 21, 2015 , 8:20 am | Sorting Complete | MC LEAN, VA 22102 |
| April 21, 2015 , 6:52 am | Arrived at Unit | MC LEAN, VA 22102 |
| April 21, 2015 , 2:46 am | Departed USPS Facility | MERRIFIELD, VA 22081 |
| April 20, 2015 , 9:44 am | Arrived at USPS Origin Facility | MERRIFIELD, VA 22081 |
| April 20, 2015 , 1:26 am | Departed USPS Facility | NTX P&DC |
| April 18, 2015 , 11:21 pm | Arrived at USPS Facility | NTX P&DC |
| April 18, 2015 , 5:56 pm | Departed Post Office | DALLAS, TX 75260 |
| April 18, 2015 , 3:22 pm | Acceptance | DALLAS, TX 75260 |

## Track Another Package

Tracking (or receipt) number

| 70132630000032263710 |          Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS ›



**Exhibit G**



**CALIBER**
HOME LOANS

May 8, 2015

Bryan Wilder
Elizabeth Wilder
1317 Cedar Hill Ave.
Dallas, TX 75208

Sent via USPS: 7014212000432336318

Re:     Loan Number:              9801458515
        Freddie Loan Number:      379111535

Dear Mr. and Mrs. Wilder:

Caliber Home Loans, Inc. ("Caliber"), servicer of the above-referenced loan, provides this response to your letter received on April 24, 2015.

Caliber is writing to advise you we are in receipt of your letter and are currently researching the request contained therein. Once the additional research has been completed, a follow-up response will be sent that will contain a proposed resolution to your request. You can expect a follow-up response to be sent within 10 days.

Caliber appreciates the opportunity to respond to your request, and we trust that the information provided brings a satisfactory resolution to this matter.

Should you have further questions regarding this response, please feel free to email our shared email box at complaintresolution@caliberhomeloans.com. By utilizing our shared email box this ensures your email is received and responded to in a timely manner.

Sincerely,

Lynnette Shahbazi
Assistant Vice President
Customer Support and Escalations

This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

13801 WIRELESS WAY | OKLAHOMA CITY, OK 73134 | (800) 401-6587 | WWW.CALIBERHOMELOANS.COM

**Exhibit H**

FILED
DALLAS COUNTY
11/3/2015 1:18:49 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

3 CT-CERT-MAIL

3 CT-REG

DC-15-13444

CAUSE NO. _____

| In Re: Order of Foreclosure | § | IN THE DISTRICT COURT |
|     Concerning | § | |
| **1317 CEDAR HILL AVENUE** | § | |
| **DALLAS, TX 75208** | § | |
|     Under Tex. R. Civ. P. 736 | § | |
| | § | |
| **Petitioner: CALIBER HOME LOANS,** | § | OF DALLAS COUNTY, TEXAS |
| **INC.** | § | |
| | § | |
| **Respondent(s): BRYAN W. WILDER AND** | § | C-68TH |
| **ELIZABETH M. WILDER** | § | _____ JUDICIAL DISTRICT |

## APPLICATION FOR AN EXPEDITED ORDER
## UNDER RULE 736 ON A HOME EQUITY LOAN

1. Petitioner is CALIBER HOME LOANS, INC., whose last known address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134.

2. Respondent is BRYAN W. WILDER, whose last known address is 1317 CEDAR HILL AVENUE, DALLAS, TEXAS 75208.   Respondent is ELIZABETH M. WILDER, whose last known address is 1317 CEDAR HILL AVENUE, DALLAS, TEXAS 75208.

3. The property encumbered by the loan agreement, contract, or lien sought to be foreclosed is commonly known as 1317 CEDAR HILL AVENUE, DALLAS, TEXAS 75208 with the following legal description:

   **LOT 17, BLOCK 1/4635, OF THE FIRST INSTALLMENT OF EAST KESSLER PARK ADDITION, AN ADDITION IN DALLAS COUNTY, TEXAS. ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN BOOK 5, PAGE 292, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.**

4. Petitioner alleges:

   A. The type of lien sought to be foreclosed is a Home Equity Loan under art. XVI, section 50(a)(6) of the Texas Constitution.  The lien is indexed at Instrument No. 2199326 and

736 HE APPLICATION
BDF No.: 00000004265468

**Exhibit I**

Page 1

recorded in the real property records of DALLAS County, Texas.

B.  Petitioner has authority to seek foreclosure of the lien because Petitioner is the holder of

the note and beneficiary of the deed of trust.

C.  The name of each Respondent obligated to pay the underlying debt or obligation

evidenced by the loan agreement, contract, or lien encumbering the property sought to be

foreclosed is BRYAN W. WILDER AND ELIZABETH WILDER.

D.  The name of each Respondent who is a mortgagor of the lien instrument sought to be

foreclosed, but who is not a maker or assumer of the underlying debt is – NOT

APPLICABLE.

E.  As of 10/22/2015:

(i)     24 regular monthly payments have not been paid.  The amount required to cure

the default is $90,099.45.   According to Servicer's records, all lawful offsets,

payments, and credits have been applied to the account in default.

(ii)    The total amount to pay off the loan agreement, contract, or lien is $181,803.50.

F.  Notice to cure the default has been sent by certified mail to each Respondent who is

obligated to pay the underlying debt or obligation.  The opportunity to cure has expired.

G.  Before this application was filed, any other action required to initiate a foreclosure

proceeding by Texas law or the loan agreement, contract, or lien sought to be foreclosed

was performed.

5.  **Legal action is not being sought against the occupant of the property unless the**

**occupant is named as a Respondent in this application.**

6.  **If Petitioner obtains a court order, Petitioner will proceed with foreclosure of the**

**property in accordance with the applicable law and the terms of the loan agreement**

736 HE APPLICATION
BDF No.: 00000004265468

**Exhibit I**

Page 2

**contract, or lien sought to be foreclosed.**

7.  The following documents are attached to this application:

    A.  An affidavit or declaration of material facts describing the basis for foreclosure.

    B.  The note and deed of trust establishing the lien.

    C.  The assignment of the lien recorded in the real property records of Harris County, Texas or other pertinent instruments, if any.

    D.  A copy of each default notice required to be mailed to any Respondent under Texas law and the loan agreement, contract, or lien sought to be foreclosed, and the USPS mailing receipt demonstrating that a notice was sent by certified mail before this application was filed.

8.  **Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to Petitioner or Petitioner's attorney immediately.**

736 HE APPLICATION
BDF No.: 00000004265468

**Exhibit I**

Page 3

9. *Prayer for Relief.* Petitioner seeks an expedited order under Rule 736 so that it may proceed

with foreclosure in accordance with applicable law and terms of the loan agreement, contract,

or lien sought to be foreclosed.

Respectfully submitted,

By:

Connie J. Vandergriff
State Bar No. 24044550
ConnieVa@bdfgroup.com
15000 Surveyor Blvd., Suite 100
Addison, Texas 75001
972-386-5040 (Phone)
972-3867673 (Fax)

ATTORNEY FOR PETITIONER

**Exhibit I**

Case 3:15-cv-04013-N-BF   Document 2   Filed 12/18/15   Page 68 of 68   PageID 126

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

3-15CV-4013N

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Bryan W. Wilder

**DEFENDANTS**
Ogden Ragland Mortgage; Mortgage Electronic registration Systems, Inc.;JPMorgan Chase Bank, N.A.; Caliber Homes, Inc.; Freddie Mac; Connie J. Vandergriff

**(b)** County of Residence of First Listed Plaintiff   **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bryan W. Wilder
1317 Cedar Hill Avenue
Dallas, TX 75208 Tel 214-505-6938

Attorneys *(If Known)*

RECEIVED
DEC 17 2015

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

### CIVIL RIGHTS
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☒ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from Another District *(specify)*
☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. 1635; 12 CFR. 226.23;  15 U.S.C. § 1640 15 U.S.C. § 1611; 12 C.F.R. 226.23; 12 C.F.R. 1026.23
Brief description of cause:
Enforcement of Notice of Rescission

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 398,286.94
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/18/2015

SIGNATURE OF ATTORNEY OF RECORD
*Bryan W. Wilder*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____